IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEXT LEVEL SPORTSYSTEMS, INC., | ) |
| Plaintiff, | ) **Case No. 1:20-cv-00252** |
| v. | ) **Hon. Virginia M. Kendall** |
| YS GARMENTS, LLC, | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO DISMISS

The only rules Plaintiff Next Level Sportsystems, Inc. ("NLS") plays by are its own, and NLS must be held accountable for its conduct. At the initial status hearing before this Court just three weeks ago, NLS's counsel admitted that the instant dispute between the parties *dates back to 2009*. Despite knowledge of Defendant YS Garments, LLC's alleged infringement, NLS failed to take action to assert its purported trademark rights for years. When NLS finally filed suit in August 2018, Judge Durkin dismissed the case because NLS failed to join a necessary and indispensable party—the co-owner of its purported trademark.[1] Just nine months later, in a separate proceeding between the parties, the Trademark Trial and Appeal Board ("TTAB") entered a default judgment against NLS and its co-owner, and cancelled their registration for the

---

[1] This action is a "previously dismissed case." *See Next Level Sportsystems, Inc. v. S&S Activewear, LLC*, No. 18 C 5926 ("*NLS-1*"), 2019 WL 1077129, at *1 (N.D. Ill. Mar. 7, 2019); *see also* (Civil Cover Sheet, ECF No. 2, filed Jan. 14, 2020). Although Local Rule 40.3(b)(2) requires a second case filed after the dismissal of a first case be assigned "to the judge to whom the first case was assigned," NLS failed to timely present the designation sheet (civil cover sheet) when it filed this case, which would have triggered this case's direct assignment to Judge Durkin. Instead, this case was assigned under the Court's random assignment system. To avoid further delay in the disposition of the case, YS Garments does not object to proceeding before this Court; it does note, however, that Local Rule 40.1(c) provides that, "[a]ny person who violates the case assignment procedures shall be punished for contempt of court," and NLS's failure to timely file the designation sheet resulted in a violation of the case assignment procedures, subjecting it to punishment for contempt.

trademark at issue, *as a sanction* for their failure to comply with the TTAB's orders after they chose to stop defending themselves. Now, NLS has not only baselessly appealed that judgment, but also re-filed the same claims against YS Garments that Judge Durkin previously dismissed, once again in this District[2] (*contrary to Judge Durkin's instructions*) and without joining the necessary party.

NLS's dilatory prosecution of this action imposes an unjust burden on, and is to the detriment of, both this Court and YS Garments. Pursuant to Federal Rules of Civil Procedure 12(b)(5) and (6), YS Garments respectfully moves for the dismissal of the Complaint filed by NLS in its entirety. NLS's claims cannot proceed because: (1) NLS failed to timely serve YS Garments; (2) NLS again failed to join a necessary and indispensable party; and (3) Counts II–VII are time-barred by either or both of the applicable statutes of limitations and the doctrine of laches.

## I.  BACKGROUND

YS Garments has been doing business as Next Level Apparel, with its headquarters in Gardena, California (which is located in Los Angeles County), for more than 15 years. (Compl. ¶¶ 6, 30; *see also NLS-1*, Defs.' Motion to Sever, Transfer, and Stay at 2, ECF No. 20, filed Dec. 21, 2018.) Since its inception in 2003, YS Garments has sold, and currently sells, quality clothing made with innovative fabric blends in a full spectrum of fits, colors, and styles, under the trademark NEXT LEVEL APPAREL. (Compl. ¶¶ 28, 30.)

On September 23, 2008, the U.S. Patent and Trademark Office ("USPTO") issued U.S. Registration No. 3,503,550 for the trademark NEXT LEVEL to NLS for use in connection with a

---

[2] Remarkably, neither NLS nor YS Garments has any significant connection to Illinois. NLS is a Pennsylvania corporation with its principal place of business in Langhorne, Pennsylvania. (Compl. ¶ 4, ECF No. 1, filed Jan. 13, 2020.) YS Garments is a California limited liability company with its principal place of business in Gardena, California. (*Id.* at ¶ 6.)

variety of clothing- and footwear-related items. (Compl. ¶¶ 23–24.) Approximately a year and a half later, on April 5, 2010, NLS assigned Sierra Sportswear, Inc. ("Sierra") a 30% ownership interest in the trademark. (Ex. 1,[3] Trademark Assignment at 1.)

The history between the parties dates back more than a decade. According to the Complaint, NLS and YS Garments were "engaged in short-lived settlement negotiations" in October 2013 regarding the very same claims at issue in this case. (Compl. ¶ 38.) And NLS "sen[t] a cease and desist letter to counsel for YS Garments" regarding YS Garments' purported trademark infringement on September 12, 2014. (Compl. ¶ 41.)

### A.    Prior Proceedings.

On December 20, 2017, YS Garments filed a petition for cancellation of NLS's trademark registration (the "Cancellation Action") for abandonment and fraud on the USPTO. (Ex. 2[4]; Compl. ¶ 45.) YS Garments' petition named Sierra as the sole defendant/registrant. (Compl. ¶ 46.) Three months later, on March 19, 2018, NLS filed a "Motion to Join Necessary and Indispensable Party," asserting that it was "a necessary and indispensable party" in the Cancellation Action. (Ex. 3.) YS Garments did not oppose NLS's joinder and filed an amended petition against both Sierra and NLS based on NLS's claim to be a 70% owner of the trademark.[5] (Ex. 4.)

---

[3] The assignment was recorded with the U.S. Patent and Trademark Office on April 19, 2010, and is a matter of public record available through the USPTO's online assignment database at assignments.uspto.gov, under Reel 4188 / Frame 0145. For the Court's convenience, YS Garments is attaching a copy of the assignment as an exhibit to this Motion.

[4] The Cancellation Action and all TTAB filings are a matter of public record and available through the TTAB's online docket at ttabvue.uspto.gov, under Cancellation No. 92067661. For the Court's convenience, YS Garments is attaching as exhibits to this Motion copies of the TTAB filings and orders in the Cancellation Action referenced herein.

[5] On April 17, 2018, the TTAB suspended the Cancellation Action pending an investigation as to whether the USPTO records properly reflected ownership of the NEXT LEVEL trademark registration. (Ex. 5 at 2.) After more than three months, the TTAB resumed the proceedings,

On August 29, 2018, more than eight months after YS Garments filed the Cancellation Action, NLS filed an action in this District alleging trademark infringement against not only YS Garments, but also 15 of its US distributors and its founder, in his individual capacity. *NLS-1*, 2019 WL 1077129, at *1. YS Garments immediately moved to dismiss pursuant to Rule 12(b)(7) for NLS's failure to join Sierra. On March 7, 2019, Judge Durkin granted YS Garments' motion and dismissed the case, ruling that Sierra was a necessary and indispensable party under Rule 19. *Id.* at *2. In particular, Judge Durkin found that Sierra's "absence would 'leave [YS Garments] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.'" *Id.* at *1 (quoting Fed. R. Civ. P. 19(a)(1)(B)(ii)). Judge Durkin further found that NLS had an "'adequate remedy'" if the case were dismissed because NLS could join Sierra in an action filed in New York. *Id.* at *2 (quoting Fed. R. Civ. P. 19(b)(4)).

Following the dismissal by Judge Durkin, YS Garments served its first set of discovery requests to NLS and Sierra in the Cancellation Action on April 10, 2019. (*See* Ex. 7, Pet'r's Mot. to Compel Discovery at 1.) NLS's and Sierra's responses were due by May 10, 2019, but they never responded. (*Id.* at 2.) After hearing nothing from NLS or Sierra either before or after the deadline for its discovery responses, YS Garments emailed NLS's counsel on May 13, 2019, advising that the discovery responses were overdue and inquiring as to (a) why there had been no response and (b) when the responses could be expected. (*Id.* at Ex. E.) When NLS failed to respond to that communication, YS Garments emailed NLS's counsel again on June 3, 2019, reminding counsel that the discovery responses were overdue and notifying him that if responses

---

(continued…)

finding that NLS "is *an owner* (albeit *not the exclusive owner*) of" the trademark. (Ex. 6 at 2–3, emphasis added.)

4

were not immediately received, YS Garments would have no choice but to file a motion to compel. (*Id.* at Ex. F.) NLS's counsel never responded.

On June 10, 2019, YS Garments filed a motion to compel discovery with the TTAB. (Ex. 7.) NLS and Sierra failed to respond to the motion. Consequently, the TTAB granted the motion as conceded and ordered NLS and Sierra to serve, within 30 days, responses to YS Garments' interrogatories and requests for production of documents. (Ex. 8 at 1–2.) Yet, NLS and Sierra failed to abide by the TTAB's order and failed to respond to the discovery in any manner. Accordingly, YS Garments moved for default judgment and cancellation of Registration No. 3,503,550 as a sanction for NLS's and Sierra's failure to comply with the discovery order. (Ex. 9, Pet'r's Mot. for Sanctions at 1.) On November 9, 2019, the TTAB granted the motion, entering judgment against NLS and Sierra, and ordering the NEXT LEVEL trademark registration to be canceled by the Commissioner for Trademarks. (Ex. 10.) The registration was cancelled on November 13, 2019. (Ex. 11.)

**B.      This Action.**

NLS filed this action on January 13, 2020, petitioning this Court to vacate the TTAB's cancellation order and asserting claims of trademark infringement, false advertising, deceptive trade and business practices, and trade disparagement against YS Garments. (Compl., ECF No. 1[6].) Based on the filing date, under Rule 4(m), NLS had until April 13, 2020, to serve YS Garments. In response to the COVID-19 Public Emergency, the Court extended the deadline for service three times: (1) Amended General Order 20-0012 extended it to May 4, 2020 (ECF No.

---

[6] The Complaint is repeatedly misnumbered. On Page 2, there are different paragraphs each having numbers 4, 5, and 6, and then the numbering skips to 22. There are no paragraphs numbered 7–21. On Page 7, there are two different paragraphs each having the number 65, and a third paragraph number 65 appears on Page 9. On Pages 7–10, there are different paragraphs each having numbers 64–75. And, in the prayer for relief, there are different paragraphs each having the letters D–H.

9); (2) Second Amended General Order 20-0012 extended it to June 1, 2020 (ECF No. 11); and (3) Third Amended General Order 20-0012 extended it to June 29, 2020 (ECF No. 12), for a total extension of 77 days.

Following the Third Amended General Order, this Court scheduled an initial status hearing in this action for September 10, 2020. (ECF No. 17.) The day before the hearing, however, NLS's counsel requested that it be rescheduled due to a "family emergency." (ECF No. 18.) It wasn't until a full week later, on September 17, 2020, that NLS finally requested issuance of a summons—more than *2.5 months* after the already-extended service deadline.[7] At the parties' rescheduled initial status hearing on September 23, 2020, in response to this Court's inquiry, counsel for NLS claimed that his failure to timely serve YS Garments was due to "a miscommunication with the process server" and "an oversight in his office."

## II. ARGUMENT

**A. This Court Should Dismiss The Complaint In Its Entirety Because NLS Failed To Timely Serve YS Garments.**

YS Garments respectfully moves to dismiss the Complaint in its entirety because NLS failed to effect timely service under Federal Rule of Civil Procedure 4(m). Fed. R. Civ. P. 12(b)(5). NLS filed the Complaint on January 13, 2020. Due to the COVID-19 Public Emergency, the original deadline for service of April 13, 2020, was ultimately extended to June

---

[7] Notwithstanding its inquiries during the pendency of the Cancellation Action, YS Garments notes that neither it nor its counsel received a single communication from NLS or its counsel between May 1, 2019, and September 18, 2020, when NLS effected its untimely service of a copy of the complaint and summons (but not any other docket entries or filings in this case, including notice of the initial status hearing that was then only five days away, or any other communication at all). Had YS Garments' counsel not taken it upon itself to check the docket, YS Garments would have been unaware of, and lacking any representative at, the recent initial status hearing before this Court.

29, 2020. Despite the multiple automatic extensions, NLS still failed to serve YS Garments until September 18, 2020—more than 2.5 months *after* the final extended deadline.[8]

Rule 4(m) provides that if a plaintiff fails to serve the defendant with the summons and the complaint "within 90 days after the complaint is filed," the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless "the plaintiff shows good cause" for failing to serve the defendant within that time. Fed. R. Civ. P. 4(m). In the absence of good cause, a district court may, in its discretion, grant an extension of time for service where the plaintiff can show "excusable neglect." *Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002) (citing *Troxell v. Fedders of North Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998)). Because NLS cannot show good cause or excusable neglect, the Complaint should be dismissed.

NLS cannot show good cause for its failure to timely serve YS Garments. Neither an "inadvertent failure to serve a defendant within the statutory period" nor "half-hearted efforts to serve a defendant" constitutes good cause. *Geiger v. Allen*, 850 F.2d 330, 333 (7th Cir. 1988). Rather, "[g]ood cause means a valid reason for delay, such as the defendant's evading service." *Coleman*, 290 F.3d at 934. No such circumstances exist here. Nor do counsel's unsubstantiated claims at the initial status hearing that there was a miscommunication within his office or with the process server constitute "excusable neglect." *See Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) ("[S]imple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice" to show good cause.).

Moreover, this case does not warrant a discretionary extension of the service deadline. NLS's decade-long pattern of delay in pursuing its purported claims and its neglect to heed the

---

[8] And, despite representing to the Court during the initial status hearing that it would file the return of service later that day, to date, NLS still has not filed it.

service deadline is inexcusable. *See Coleman*, 290 F.3d at 934. Relevant considerations in determining whether to grant a discretionary extension include whether the plaintiff "ever requested an extension from the court due to difficulties in perfecting service . . . and whether they diligently pursued service during the allotted period." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1006–07 (7th Cir. 2011) (affirming the district court's dismissal of the action "to hold the [p]laintiffs accountable for their actions—or, more accurately, inaction—by dismissing the case"). During the two and a half months following the already-extended deadline, NLS's "failure to seek an extension of time in which to effectuate service demonstrates less than exemplary diligence." *Pearson v. Metz Baking Co.*, No. 96 C 1529, 1998 WL 312018, at *3 (N.D. Ill. June 4, 1998).

The Complaint should be dismissed in its entirety.

**B.      Dismissal Is Proper Pursuant To Rule 12(b)(6).**

Dismissal is also warranted pursuant to Rule 12(b)(6) for any or all of the following reasons: (1) NLS failed to join a necessary and indispensable party; (2) Counts IV–VII are time-barred by the applicable statutes of limitations; and (3) Counts II–VII are barred by the doctrine of laches. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court, however, "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (internal quotations marks omitted) (citation omitted). NLS's Complaint fails to meet this fundamental standard and should be dismissed.

1. ***The Complaint Must Be Dismissed Because NLS Has Yet Again Failed To Join A Necessary And Indispensable Party.***

YS Garments respectfully moves this Court to dismiss the Complaint under Rule 12(b)(6) because NLS failed to properly join Sierra, a necessary and indispensable party under Rule 19, as previously determined by Judge Durkin.

The doctrine of issue preclusion, sometimes referred to as "collateral estoppel," "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The purpose of the doctrine is to "conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). Because a federal district court previously decided that Sierra was a necessary and indispensable party under Rule 19 (*NLS-1*, 2019 WL 1077129, at *1–2), federal common law applies. *Taylor*, 553 U.S. at 891 (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)). Under federal common law, if the following elements are met, then issue preclusion applies and the issue may not be litigated:

> (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was represented in the prior action.

*Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000).

As a preliminary matter, issue preclusion is an affirmative defense. *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009). A court may dismiss a complaint under Rule 12(b)(6) based on an affirmative defense when it has before it all it needs to rule on the defense. *See Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 & n.2 (7th Cir. 2014). This occurs when "an affirmative defense is disclosed in the complaint." *Muhammad v. Oliver*, 547 F.3d 874, 878

(7th Cir. 2008). A complaint discloses an affirmative defense where "(1) the facts that establish the defense are definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice; and (2) those facts conclusively establish the defense." *New West v. City of Joliet*, No. 05 CV 1743, 2017 WL 6540046, at *2 (N.D. Ill. Aug. 14, 2017) (internal quotation marks omitted) (citation omitted). And a court can take judicial notice of matters of public record, such as the contents of court records. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

  Here, this Court can rule on issue preclusion as a Rule 12(b)(6) motion because: (1) the necessary facts are "definitively ascertainable" from the Complaint itself and from Judge Durkin's prior order and judgment; and (2) "those facts conclusively establish" that (a) NLS has not joined Sierra to this action and that (b) Sierra is a necessary and indispensable party.

  As to the applicability of the doctrine itself, each element of issue preclusion is easily met here. First, the issues sought to be precluded—that Sierra is a necessary and indispensable party under Rule 19 and that the case should therefore be dismissed pursuant to Rule 12(b)(7)—are the same issues that were litigated and decided in the prior action. *See NLS-1*, 2019 WL 1077129. Second, those issues were actually litigated. YS Garments filed a motion to dismiss because NLS had failed to join Sierra, and NLS filed a response in opposition to that motion. (*NLS-1*, ECF Nos. 17 and 41.) Third, the determination of those issues was essential to the final judgment. Judge Durkin determined that, because Sierra was a necessary and indispensable party that could not be feasibly joined, the case had to be dismissed. *Id.* at *1. Fourth, the party against whom issue preclusion is now invoked, NLS, was the plaintiff in the prior action.

Indeed, it is "definitively ascertainable" from the Complaint that NLS is the sole plaintiff in this action: "The Plaintiff, Next Level Sportsystems, Inc. . . . brings this complaint . . . ." (Compl. at 1.) Although the caption of the Complaint suggests that NLS brings the suit "on behalf of itself and as attorney-in-fact for SIERRA SPORTSWEAR INC.," the Complaint provides no information whatsoever indicating how Sierra is joined, if at all, as a party, or the basis for NLS's apparent claim to be acting on Sierra's behalf as its attorney-in-fact. (*Id.*) Merely listing Sierra in the caption of the Complaint appears to be nothing more than a thinly-veiled attempt to circumvent Judge Durkin's order, which should not be condoned by this Court. Simply put, NLS has failed to provide "sufficient factual matter, accepted as true, [that is necessary] to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

The Complaint should therefore be dismissed in its entirety for failure to join a necessary and indispensable party—the co-owner of the purported trademark rights being infringed, Sierra.

  **2.** ***The Claims Are Time-Barred By The Applicable Statutes Of Limitations And By Laches.***

YS Garments also moves to dismiss (1) Counts IV–VII because they are time-barred by the applicable statutes of limitations and (2) Counts II–VII pursuant to the doctrine of laches.

  **a.** **Counts IV–VII Are Barred By Statutes Of Limitations**

Counts IV–VII must be dismissed because NLS brings these claims at least two full *years* too late. *See Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 719 (7th Cir. 1993) ("A complaint that on its face reveals that the plaintiff's claim is barred by a statute of limitations . . . can be dismissed on a motion to dismiss."). Each of these Counts are subject to a three-year statute of limitations. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*, expressly provides that it is subject to a three-year statute of limitations. 815

ILCS 505/10a(e); (Count V). And the same three-year statute of limitations period has been held to govern claims for common law unfair competition, as well as claims asserted under the Illinois Uniform Deceptive Trade Practices Act, which are alleged in Counts VI, VII, and IV, respectively. *See Persis Int'l, Inc. v. Burgett, Inc.*, No. 09 C 7451, 2012 WL 4176877, at *3 (N.D. Ill. Sept. 18, 2012); *Reinke & Assocs. Architects Inc. v. Cluxton*, No. 02 C 0725, 2002 WL 31817982, at *1 (N.D. Ill. Dec. 16, 2002).

In Illinois, statutes of limitations begin to run when "the injured party knows or should have known of his injury." *City Nat'l Bank of Fla. v. Checkers, Simon & Rosner*, 32 F.3d 277, 282 (7th Cir. 1994) (internal quotation marks) (citation omitted). Courts have found that the plaintiff has actual knowledge of alleged trademark infringement when they are engaged in settlement negotiations with the alleged infringer, and when the plaintiff sends a cease-and-desist letter. *See Superior Paintless Dent Removal, Inc. v. Superior Dent Removal, Inc.*, 454 F. Supp. 2d 769, 771 (N.D. Ill. 2006). The Complaint itself states that NLS and YS Garments were "engaged in short-lived settlement negotiations" regarding the purported trademark in October 2013. (Compl. ¶ 38.) Then, on September 12, 2014, NLS "sen[t] a cease and desist letter to counsel for YS Garments" regarding YS Garments' use of the purported mark. (Compl. ¶ 41.) Thus, under the best-case scenario for NLS, the three-year statute of limitations began no later than September 12, 2014. However, NLS did not file this action until January 13, 2020—more than *five years* later.

The claims in Counts IV–VII must be dismissed because they are too late.

### b. Counts II–VII Are Barred By The Doctrine Of Laches

YS respectfully moves that Counts II–VII be dismissed because of laches. "The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Chattanoga*

12

*Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999)).

To prevail on the affirmative defense of laches, YS Garments must prove three things: (1) that NLS had knowledge of YS Garments' use of the purported trademark; (2) that NLS unreasonably delayed in taking action as to YS Garments' purported use of the trademark; and (3) that YS Garments would be prejudiced by allowing NLS to assert its rights at this time. *Id.* at 792–93. Each of these elements is satisfied by allegations in NLS's Complaint. *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 916 (N.D. Ill. 2007) (explaining that plaintiffs "can plead themselves out of court by 'setting forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely'" (quoting *Superior Paintless*, 454 F. Supp. 2d at 771)). Courts use a state's "analogous limitations period as a baseline for determining whether a presumption of laches exists" for causes of action brought under the Lanham Act. *Hot Wax*, 191 F.3d at 821. Illinois courts have held that "the most analogous Illinois limitation period [is] the three-year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act." *Chattanoga Mfg.*, 301 F.3d at 793; *see* 815 ILCS 505/10a(e).

Each element of laches is satisfied by the contents of the Complaint; NLS has "pleaded itself out of court." *Flentye*, 485 F. Supp. 2d at 916.

First, NLS had actual knowledge of YS Garments' allegedly infringing use of the trademark at issue no later than September 12, 2014. *See Chattanoga Mfg.*, 301 F.3d at 793 ("[A] plaintiff must have actual or constructive notice of the defendant's activities."). As noted above, NLS engaged in settlement negotiations with YS Garments regarding the purported trademark in 2013 and, on September 12, 2014, NLS sent a cease-and-desist letter to YS Garments. (Compl.

13

¶¶ 38, 41.) Settlement negotiations and cease-and-desist letters establish actual knowledge of trademark infringement for purposes of laches. *Superior Paintless*, 454 F. Supp. 2d at 771.

Second, the Complaint establishes that NLS unreasonably delayed. The Complaint alleges that YS Garments never "responded to or acknowledged" the cease-and-desist letter (Compl. ¶ 42), yet NLS has now waited more than *five years* before asserting its purported trademark rights in this case. This Court granted YS Garments' motion to dismiss *NLS-1* on March 7, 2019, for failure to join Sierra. Rather than promptly file an action in New York to properly join Sierra, as instructed by Judge Durkin, NLS waited nearly *a full year* to file this action. And, in the interim, NLS ignored its discovery obligations and defied the TTAB's discovery order in the Cancellation Action. Only after the TTAB entered judgment against it and cancelled its trademark registration did NLS file the present action. Because NLS failed to file this action within the three-year statute of limitations, the second element is satisfied and there is a "presumption of laches." *Chattanoga Mfg.*, 301 F.3d at 793.

Lastly, the Complaint establishes that YS Garments would be prejudiced if NLS were permitted to assert its rights at this time. *Id.* at 792–93. The Complaint specifically details the ways in which YS Garments "has changed [its] position in a way that would not have occurred if [NLS] had not delayed." *Id.* at 795. In particular, during the time *after* NLS had actual knowledge of YS Garments' allegedly infringing use of the mark but *before* NLS filed a lawsuit, YS Garments filed four new federal trademark applications for variations on the purportedly infringing trademark, and YS Garments pledged those trademarks as collateral for its recapitalization. (Compl. ¶¶ 43, 49–50.) According to NLS, "[YS Garments] *unambiguously* articulated an expectation of materially increased levels of manufacturing, importing, and selling the Infringing Goods." (Compl. ¶ 51.) By sleeping on its rights, NLS has materially prejudiced

14

YS Garments, as NLS itself concedes in the Complaint. *See Chattanoga Mfg.*, 301 F.3d at 795 ("Prejudice may be shown if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business around its trademark.").

The claims in Counts II–VII must be dismissed because they are too late.

### III.  CONCLUSION

There are multiple grounds upon which this Court can, and should, dismiss this case and hold NLS accountable for its inexcusable failure to prosecute this action by timely effecting service, failure to join the co-owner of its purported trademark, and failure to timely pursue its claims. Defendant respectfully requests the Court dismiss the Complaint in its entirety.

Dated:  October 14, 2020

Respectfully submitted,

/s/ *Angela R. Gott*
Angela R. Gott (OH 0082198)
agott@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114-1190
Telephone:  (216) 586-3939

Michelle B. Smit (6330463)
msmit@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois  60601-1692
Telephone:  (312) 782-3939

*Attorneys for Defendant*
*YS Garments, LLC*